UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WALTER D MEJIA,

         Plaintiff,

     v.

WHITE PLAINS SELF STORAGE CORP.,

         Defendant.

No. 18-CV-12189 (KMK)

OPINION & ORDER

---

Appearances:

Walter D Mejia
Bronx, NY
*Pro Se Plaintiff*

Seth Diamant Kaufman, Esq.
Fisher Phillips, LLP
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

  Walter D Mejia ("Plaintiff") brings this Action against White Plains Self Storage Corporation ("Defendant"), alleging that Defendant discriminated against Plaintiff on the basis of religion in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*, New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290, *et seq.*, and New York City Human Rights Law ("NYCHRL"), N.Y. City Admin. Code §§ 8-101, *et seq.*, when Plaintiff was terminated from his job in November 2017. (*See* Compl. (Dkt. No. 2).) Before the Court is Defendant's Motion To Dismiss (the "Motion"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). (*See* Not. of Mot. (Dkt. No. 12).) For the reasons discussed below, the Motion is granted.

I.  Background

   A.  Factual Background

   The following facts are taken from Plaintiff's verified Complaint and the exhibits incorporated therein and are assumed to be true for the purposes of this Motion.  *See Sierra Club v. Con-Strux LLC*, 911 F.3d 85, 88 (2d Cir. 2018) (accepting "all factual allegations as true" for the purposes of a motion to dismiss and deeming a complaint to include "any written instrument attached to it as an exhibit" (citations omitted)).[1]

---

[1] The Court notes that, on April 18, 2019, before Defendant had filed its Motion, Plaintiff filed a letter attaching several text messages and e-mails. (Dkt. No. 11.)  These were not referenced in the Complaint or attached to it, nor do they appear to be part of an opposition to Defendant's Motion, since they were filed before the Motion. (*See* Compl.)  Accordingly, the Court will not consider them for the purposes of this Motion.  *See Tulczynksa v. Queens Hosp. Ctr.*, No. 17-CV-1669, 2019 WL 6330473, at *3 (S.D.N.Y. Feb. 12, 2019) ("In resolving a 12(b)(6) motion, a district court must limit itself to the facts alleged in the complaint . . . ; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint 'relies heavily' and which are, thus, rendered 'integral' to the complaint." (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002))); *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 283 n.9 (S.D.N.Y. 2015) (declining to consider the plaintiff's exhibits attached to its opposition because they were "not incorporated by reference into or integral to the [complaint]"); *Madu, Edozie & Madu, P.C. v. SocketWords Ltd. Nigeria*, 265 F.R.D. 106, 122–23 (S.D.N.Y. 2010) ("Courts in this Circuit have made clear that a plaintiff may not shore up a deficient complaint through extrinsic documents . . . ." (collecting cases)); *see also Lefkowitz v. Westreich*, No. 16-CV-6845, 2017 WL 3491968, at *8 n.10 (S.D.N.Y. Aug. 14, 2017) (applying the *Madu* principle to a pro se plaintiff and noting, as here, that the "improperly filed documents and sur-reply do not change the result in this case.").  Regardless, the materials are largely irrelevant to Plaintiff's claims of religious discrimination, as they mostly document communications regarding various employees' timeliness and the accuracy of the accounting of the White Plains storage facility that Plaintiff supervised.  (*See* Dkt. No. 11.)
   In contrast to the documents submitted in April 2019, Plaintiff did directly attach to his Complaint a Dismissal and Notice of Rights issued by the United States Equal Employment Opportunity Commission ("EEOC") and a Determination and Order After Investigation by the New York State Division of Human Rights.  (*See* Compl. 10–12.)  The Court will consider these documents as they are appended to the Complaint. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (noting that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes" (citing Fed. R. Civ. P. 10(c)) (quotation marks omitted)).

Plaintiff was allegedly hired by Defendant in June 2017. (Compl. 5.)[2] According to Plaintiff, he was hired "with the agreement to have a religious accommodation." (*Id*.) Plaintiff alleges that things were "going well" until, on September 30, 2017, Plaintiff allegedly emailed the district manager and office manager indicating concerns that he was "being scheduled on Sundays." (*Id*.) Plaintiff avers that following that email, he "was treated differently than other employees," he was "unjustly written up," and "ultimately terminated on [November] 25[,] 2017." (*Id*.) Based on these allegations, Plaintiff has marked boxes indicating that Defendant improperly discriminated against Plaintiff on the basis of religion by terminating him, by treating him differently than similarly situated individuals, by retaliating against him, and by creating a hostile work environment. (*Id*.)

Attached to Plaintiff's Complaint is a Determination and Order After Investigation ("Determination") written by the New York State Division of Human Rights ("NYSDHR"), dated July 27, 2018. (*See* Compl. 11–12.) In it, the NYSDHR noted that "[a]fter investigation, and following opportunity for review of related information and evidence by the named parties, the [NYSDHR] has determined that there is no probable cause to believe that [Defendant] has engaged in or is engaging in the unlawful discriminatory practice complained of." (*Id*. at 11 (alterations omitted).) In the Determination, the NYSDHR reviewed the record before it and determined that it did not support Plaintiff's assertion that Defendant had "promised to accommodate his request to take Sundays off." (*Id*.) Moreover, according to the NYSDHR, the record included "write-ups that support [Defendant's] claim that it terminated [Plaintiff] because of poor performance." (*Id*. at 12.) The NYSDHR concluded that there was "insufficient

---

[2] Because the Complaint does not use numbered paragraphs, the Court cites to the ECF page numbers, stamped on the upper right-hand corner of each page.

3

evidence" to show that Defendant's "conduct was motivated by unlawful discriminatory animus related to [Plaintiff's] creed," and provided Plaintiff with guidance on next steps, including notifying Plaintiff that he had the right to request EEOC review of his complaint, and, that if he did not request review, the EEOC would typically "adopt" the NYSDHR's conclusion. (*Id.*) Also attached to the Complaint is the EEOC's Dismissal and Notice of Rights ("EEOC Dismissal"), dated September 25, 2018, which reads, "The EEOC is closing its file on this charge for the following reason," and marks the option stating, "The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge." (*Id*. at 10.)

B. Procedural Background

Plaintiff initiated this Action by filing a Complaint on December 21, 2018. (Compl.) Plaintiff applied to proceed in forma pauperis ("IFP"), (Dkt. No. 1), and the application was granted on December 27, 2018, (Dkt. No. 3). In response to a Pre-Motion Letter from counsel for Defendant, (Dkt. No. 9), the Court set a briefing schedule, thus obviating the need for a pre-motion conference, (Dkt. No. 10). On May 10, 2019, Defendant filed its Motion and Memorandum. (*See* Not. of Mot.; Def.'s Mem. in Supp. of Mot. ("Def.'s Mem.") (Dkt. No. 13).) Plaintiff did not file an opposition, and Defendant did not file a reply. The Court considers the Motion fully submitted.

## II. Discussion

Defendant argues that the Complaint should be dismissed because the NYCHRL does not apply to Plaintiff; the Court does not have subject matter jurisdiction over Plaintiff's state claims, as Plaintiff has foregone his opportunity to pursue those claims in this Court by filing them

before the NYSDHR; and Plaintiff failed to sufficiently plead his federal claims. (Def.'s Mem. 3–10.)

### A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the

hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Defendant's Motion, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). The Court must also "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [the complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted). However, when the complaint is drafted by a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including "documents that a pro se

litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at

*4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted).[3]

    B. Analysis

        1. State and Local Claims

            a. NYCHRL Claim

New York law dictates that the NYCHRL protects only a limited class of people—New York City (the "City") residents and "those who work in the [C]ity," which is defined as "the five boroughs" in the City's Administrative Code. *Hoffman v. Parade Publ'ns*, 933 N.E.2d 744, 747 (N.Y. 2010) (holding that, for the NYCHRL to apply to a particular case, nonresidents must show that "the alleged discriminatory conduct had an impact within" the boundary of New York City). The five boroughs refer to Manhattan, the Bronx, Brooklyn, Queens, and Staten Island, and, notably, do not include the city of White Plains. *See* N.Y.C. Admin. Code §2-201. Defendant correctly notes that Plaintiff alleges only that he worked in White Plains and not that he worked in the City. (*See* Compl. 2, 3 (listing the address of Plaintiff's workplace).) However, the text of the *Hoffman* holding, which limited the territorial jurisdiction of the NYCHRL, applied only to non-residents. *See Hoffman*, 933 N.E.2d at 747 ("[W]e conclude that a nonresident must plead and prove that the alleged discriminatory conduct had an impact in New York."). In contrast, here, Plaintiff is a resident of the Bronx, one of the five boroughs of the

---

[3] As discussed in note 1, *supra*, Plaintiff's additional submitted documents were not attached to any opposition, as they pre-dated the Motion itself. (*See* Dkt. No. 11.) The Court declines to consider them for the purposes of this Motion, but, in any case, they would not change the outcome, as they are largely irrelevant to Plaintiff's claims for discrimination, retaliation, and/or harassment on religious grounds.

City, which, at first glance, adds a wrinkle to the analysis set forth in *Hoffman*. (*See* Compl. 2 (listing Plaintiff's home address).)

However, other courts in the Second Circuit have noted that the same rationale—limiting the scope of the NYCHRL to cases where the discriminatory *conduct* had its impact within the City—is "equally applicable to claims brought by [City] residents" because to hold otherwise would create the same "inconsistent and arbitrary results" that the *Hoffman* court was trying to avoid, i.e., the possibility of holding an employer liable under the NYCHRL "based solely on its employees['] chosen residence." *Robles v. Cox & Co.*, 841 F. Supp. 2d 615, 624 (E.D.N.Y. 2012); *see also Wahlstrom v. Metro-North Commuter Railroad Co.*, 89 F. Supp. 2d 506, 527–28 (S.D.N.Y. 2000) (dismissing a discrimination claim under the NYCHRL without reference to the plaintiff's residence because "the alleged incidents took place in White Plains, New York, well outside the borders of New York City"); *Hardwick v. Auriemma*, 983 N.Y.S.2d 509, 511–12 (App. Div. 2014) ("The [NYCHRL] do[es] not apply to acts of discrimination against [City] residents committed outside [its] boundaries by foreign defendants. In analyzing where the discrimination occurred, courts look to the location of the impact of the offensive conduct." (citations and quotation marks omitted)); *Ortiz v. Haier Am. Trading, LLC*, 2011 N.Y. Slip Op. 31414 (Sup. Ct. 2011) (noting that it is the location of the "impact of the discriminatory conduct or decision," not the plaintiff's residence, nor the defendant's principal place of business, that determines whether the NYCHRL applies). Because Plaintiff has not alleged any facts indicating that the impact of the alleged discrimination occurred within the bounds of the City, and has instead alleged events that took place only at his workplace in White Plains, Plaintiff's NYCHRL claim is dismissed.

### b. NYSHRL Claim

New York law dictates that "[a]ny person claiming to be aggrieved by an unlawful discriminatory practice," including discrimination on the basis of religion, "shall have a cause of action in any court of appropriate jurisdiction . . . *unless* such person had filed a complaint hereunder or with any local commission on human rights." N.Y. Exec. Law § 297(9) (emphasis added). Courts have interpreted this to mean that "a party filing with the [NYSDHR] is precluded from pursuing his or her state discrimination claim in [federal] court unless that claim is dismissed on the ground of 'administrative convenience.'" *Nagle v. John Hancock Mut. Ins. Co.*, 767 F. Supp. 67, 70 (S.D.N.Y. 1991); *see also York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 127 (2d Cir. 2002) ("Thus, by the terms of the statute . . ., the NY[S]HRL . . . claim[], once brought before the NYSDHR, may not be brought again as a plenary action in another court." (citation omitted)). Furthermore, it is clear from the Complaint itself that Plaintiff's NYSHRL claim was not simply dismissed pursuant to administrative convenience, which is "a specific statutory instrument," *York*, 286 F.3d at 127 n.2, because the attached NYSDHR Determination dismissed Plaintiff's case on the merits and nowhere mentions administrative convenience, (*see* Compl. 11–12 ("Specifically, there is insufficient evidence of a nexus between [Defendant's] decision and [Plaintiff's] creed.")). Therefore, this Court does not have the authority to re-hear Plaintiff's NYSHRL claim, and it must be dismissed. *See Vargas v. Reliant Realty*, No. 13-CV-2341, 2014 WL 4446165, at *8 (S.D.N.Y. Sept. 9, 2014) (barring NYSHRL discrimination and retaliation claims where they had already been adjudicated by the NYSDHR); *Benson v. N. Shore-Long Island Jewish Health Sys.*, 482 F. Supp. 2d 320, 325–26 (E.D.N.Y. 2007) (dismissing NYSHRL claim for lack of jurisdiction where the NYSDHR had issued a no-probable-cause determination on the same allegations of discrimination and

retaliation as the ones present in the federal action); *see also Bleichert v. N.Y. State Educ. Dep't*, —F. App'x—, 2019 WL 6704979, at *2 (2d Cir. Dec. 10, 2019) (affirming dismissal of NYSHRL for lack of subject matter jurisdiction because the plaintiff's complaint acknowledged that the NYSDHR "found no probable cause on her claims" (quotation marks omitted)).

### 2. Federal Claims

#### a. Applicable Law

Title VII prohibits discrimination against an employee based on that employee's "race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a), and also prohibits retaliatory discrimination against any employee for "oppos[ing] any practice made an unlawful employment practice by [Title VII]," *id*. § 2000e-3(a). Courts analyze claims for discrimination and retaliation pursuant to Title VII under the familiar three-part framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). *See Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251 (2d Cir. 2014) (Title VII claim); *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (retaliation claim). "Under *McDonnell Douglas*, a plaintiff bears the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination; it is then defendant's burden to proffer a legitimate non-discriminatory reason for its actions; the final and ultimate burden is on the plaintiff to establish that the defendant's reason is in fact pretext for unlawful discrimination." *Abrams*, 764 F.3d at 251. To establish a prima facie case, a plaintiff "must [allege]: (1) that he belonged to a protected class; (2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008) (citation omitted); *see also Dickens v. Hudson Sheraton Corp., LLC*, 167 F. Supp. 3d 499, 518 (S.D.N.Y.

10

2016) (same), *aff'd*, 689 F. App'x 670 (2d Cir. 2017). "[A] plaintiff alleging discrimination based on disparate . . . treatment," as here, "must demonstrate that [he] was subject to an adverse employment action and that a similarly situated employee not in the relevant protected group received better treatment." *Campbell v. County of Onondaga*, No. 04-CV-1007, 2009 WL 3163498, at *15 (N.D.N.Y. Sept. 29, 2009) (citation and quotation marks omitted). It must be alleged that the plaintiff "was similarly situated in all material respects to the individuals with whom [the plaintiff] seeks to compare [himself]." *Jenkins v. St. Luke's-Roosevelt Hosp. Ctr.*, No. 09-CV-12, 2009 WL 3682458, at *7 (S.D.N.Y. Oct. 29, 2009) (citation and quotation marks omitted); *see also Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (same).

As for retaliation claims under Title VII, the Second Circuit has identified four requisite elements: "(1) [the plaintiff's] participation in a protected activity; (2) that [the defendant] knew of [the plaintiff's] participation in that protected activity; (3) that [the plaintiff] suffered an adverse employment action; and (4) that there exists a causal relationship between the protected activity and the adverse employment action." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010).

Lastly, for Title VII hostile work environment claims, a plaintiff must plead conduct that "(1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected status]," *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (citation, alterations, and quotation marks omitted); *see also Ruiz v. City of N.Y.*, No. 14-CV-5231, 2015 WL 5146629, at *8 (S.D.N.Y. Sept. 2, 2015) (same).

11

### b. Application

Here, Plaintiff does not plausibly allege sufficient, non-conclusory facts to establish a prima facie case for discrimination on the basis of religion. Plaintiff alleges that he was hired "with the agreement to have a religious accommodation," that, at some point, he began to have "concern[s] on being scheduled on Sundays," and that after voicing these concerns, he was "treated differently than other employees" and subsequently "unjustly written up and ultimately terminated." (Compl. 5.) Plaintiff does not allege the scope of the alleged requested accommodation, what Plaintiff's supervisors said or did to indicate discriminatory intent, or how similarly-situated individuals (if any) were treated differently from Plaintiff; indeed, Plaintiff does not even allege to which religion Plaintiff purports to subscribe. Plaintiff's Complaint provides only "naked assertions devoid of further factual enhancement," *Iqbal*, 556 U.S. at 678 (alteration and quotation marks omitted), and these conclusory statements, with almost no particularly alleged facts, do not "nudge[] [Plaintiff's] claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570. Plaintiff also fails to plausibly allege disparate treatment or impact on the basis of his religion, because he fails to describe the existence of any putative comparators or how he was "treated differently", (Compl. 5), from them, *see Murray v. Dutchess Cty. Executive Branch*, No. 17-CV-9121, 2019 WL 4688602, at *10–11 (S.D.N.Y. Sept. 25, 2019) (dismissing claims of racial discrimination brought under Title VII where the plaintiff "broadly allege[d] that" certain events "culminating in his termination were . . . discriminatory" but failed to "identify any comparators at all, let alone any comparator employee . . . who was disciplined or otherwise treated differently than [the plaintiff] was under similar circumstances" (citation omitted)); *see also Bilge v. City Univ. of N.Y.*, No. 15-CV-8873, 2017 WL 498580, at *9 (S.D.N.Y. Jan. 19, 2017) ("Numerous courts within the Second Circuit have granted motions to

12

dismiss disparate treatment claims 'where the complaint was entirely devoid of any details regarding the purported comparators, e.g., who they are, what their positions or responsibilities were at the company, how their conduct compared to plaintiffs'[,] or how they were treated differently by defendants.'" (citation and alterations omitted)).  Accordingly, Plaintiff's religious discrimination claim is dismissed.

Plaintiff also fails to plausibly allege a retaliation claim.  Plaintiff's only possible allegation that he engaged in the "protected activity" required at the first step of all retaliation claims is that Plaintiff "emailed" his supervisors about his "concern on being scheduled on Sundays."  (Compl. 5.)  This bare statement does not do enough to allege that Plaintiff had engaged in even an "informal protest[] of *discriminatory* employment practices," *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990) (emphasis added), as opposed to a "[g]eneralized complaint[]" that Defendant was not honoring the alleged understanding that Defendant would try to avoid scheduling Plaintiff for Sunday shifts, *Risco v. McHugh*, 868 F. Supp. 2d 75, 110 (S.D.N.Y. 2012.)  "Generalized complaints about a supervisor's treatment are insufficient" to allege that a plaintiff "engaged in a protected activity."  *Id.*; *see also Jean-Pierre v. Citizen Watch Co. of Am., Inc.*, No. 18-CV-0507, 2019 WL 5887479, at *16 (S.D.N.Y. Nov. 12, 2019) (dismissing retaliation claim where the plaintiff "complained frequently about many things," but did not allege that she ever complained about "discriminatory conduct"); *Aspilaire v. Wyeth Pharmaceuticals, Inc.*, 612 F. Supp. 2d 289, 308–09 (S.D.N.Y. 2009) ("[M]ere complaints of unfair treatment by an individual are not protected speech because unfair treatment by an employer does not implicate a public interest concern." (citation omitted)).  Here, Plaintiff does not allege that he complained of disparate treatment because of his religious beliefs—he only alleges that he complained that Defendant was not honoring his request not to work on Sunday

shifts; indeed nothing in the Complaint suggests that Plaintiff even mentioned to his supervisors how his religion necessitated this particular need. More specific allegations regarding the nature of his communication are necessary to nudge the possibility that Plaintiff engaged in protected activity from "conceivable to plausible." *Twombly*, 550 U.S. at 570. Accordingly, Plaintiff's retaliation claim is also dismissed.[4]

Finally, Plaintiff fails to allege a single instance of harassment on behalf of himself or any other coworker on religious grounds. Far more detailed allegations of a hostile work environment have failed to meet the demanding standards of this claim, which require, at minimum, allegations of "objectively severe or pervasive" conduct based on the plaintiff's protected status. *Patane*, 508 F.3d at 113. Accordingly, any hostile work environment claim is also dismissed. *See Littlejohn v. City of New York*, 795 F.3d 297, 321 (2d Cir. 2015) (dismissing hostile work environment claim brought under Title VII even where the plaintiff did allege some instances of "negative statements," "harsh tones," and "reprimand[s]"); *Murray*, 2019 WL 4688602, at *11–12 (noting the "high bar" required of hostile work environment claims and dismissing the claim because no allegation suggested that "any [d]efendant . . . used . . . derogatory language or acted in an overtly . . . discriminatory way" (collecting cases)); *Salas v. N.Y.C. Dep't of Investigation*, 298 F. Supp. 3d 676, 683–84 (S.D.N.Y. 2018) (dismissing hostile work environment claim where the plaintiff "failed to allege even a single instance where she or a coworker was personally harassed on the basis of religion").

---

[4] Because Plaintiff's claim fails at the first required element of a retaliation claim, the Court does not at this time address the sufficiency of the Complaint as to the other elements of the claim, including the causation requirement.

## III. Conclusion

For the reasons stated above, Defendant's Motion To Dismiss is granted. Because this is the first adjudication of Plaintiff's claims on the merits, the dismissal is without prejudice. If Plaintiff wishes to file an amended complaint, Plaintiff must do so within 30 days of the date of this Opinion & Order. Plaintiff should include within that amended complaint any changes to correct the deficiencies identified in this Opinion & Order that Plaintiff wishes the Court to consider. Plaintiff is advised that the amended complaint will replace, not supplement, the Complaint. The amended complaint must contain *all* of the claims, factual allegations, and exhibits that Plaintiff wishes the Court to consider. If Plaintiff fails to abide by the 30-day deadline, his claims may be dismissed with prejudice.

The Clerk is respectfully directed to terminate the pending Motion. (Dkt. No. 12.)

SO ORDERED.

DATED: January 16, 2020
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE